United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH HERNANDEZ, | Case No. 21-cv-04368-HSG |
| Plaintiff, | |
| | **ORDER SCREENING COMPLAINT; REQUIRING RESPONSE FROM PLAINTIFF** |
| v. | |
| I.S.U., et al., | |
| Defendants. | |

Plaintiff, an inmate at High Desert State Prison, has filed a *pro se* action pursuant to 42 U.S.C. § 1983 regarding events that happened at Pelican Bay State Prison ("PBSP"), where he was previously housed. His complaint (Dkt. No. 1) is now before the Court for review under 28 U.S.C. § 1915A. Plaintiff has been granted leave to proceed *in forma pauperis* in a separate order.

## DISCUSSION

### A.      Standard of Review

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1), (2). *Pro se* pleadings must, however, be liberally construed. *See United States v. Qazi*, 975 F.3d 989, 993 (9th Cir. 2020).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the

1   grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted).

2   While Rule 8 does not require detailed factual allegations, it demands more than an unadorned,

3   the-defendant-unlawfully-harmed-me accusation.  *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).

4   A pleading that offers only labels and conclusions, or a formulaic recitation of the elements of a

5   cause of action, or naked assertions devoid of further factual enhancement does not suffice.  *Id.*

6   To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements:  (1) that a

7   right secured by the Constitution or laws of the United States was violated, and (2) that the alleged

8   violation was committed by a person acting under the color of state law.  *See West v. Atkins*, 487

9   U.S. 42, 48 (1988).

10   **B.      Complaint**

11           The complaint names as defendants the following PBSP correctional officials: Warden

12   Clark Ducart, Chief Deputy Warden Bradbury, captain Parry, captain Short, lieutenant Lacy,

13   lieutenant Manion, lieutenant McBride, lieutenant Strain, sergeant Ramsey, analyst Bramucci,

14   correctional counselor Sheldon, correctional counselor Royal, correctional counselor Townsend-

15   Campbell, associate warden Barneburg, associate warden Bell, officer Kaufman, officer Tunrell

16   and John Does.  Dkt. No. 1 at 1, 4, 8-13.

17           The complaint is 58 pages long, and accompanied by nearly 100 pages of exhibits.  In

18   considering whether the complaint states cognizable claims for relief, the Court only considers the

19   body of the complaint.  The Court will not rummage through the exhibits to determine if a

20   cognizable claim has been stated in them.

21           The complaint primarily challenges three events or categories of events.

22           First, the complaint challenges Plaintiff's placement in the administrative segregation unit

23   ("ASU") and the special housing unit ("SHU") based on a Confidential Information Disclosure,

24   also referred to as a CDCR Form 1030 (*hereinafter* "Form 1030"), authored by defendant

25   Kaufman.  The complaint alleges that the Form 1030 and subsequent placement in ASU and SHU

26   violated prison regulations and the Due Process Clause.

27           On or about August 3, 2017, a Confidential Information Disclosure, also referred to as a

28   CDCR Form 1030 (*hereinafter* "Form 1030"), was generated, reporting that a confidential

United States District Court
Northern District of California

2

informant had reported that a validated member of the Mexican Mafia was ordering inmates to coordinate an assault on correctional officers. Plaintiff was allegedly identified as one of the possible inmates coordinating and planning the assault.

On August 5, 2017, Plaintiff was called to the rotunda office where he was met by four unidentified correctional officers who subjected him to both a clothed body search and an unclothed body search. Neither search yielded anything. When Plaintiff asked why he had been called to the rotunda, an unidentified correctional officer responded that Plaintiff knew the reason why. Plaintiff was placed in a holding cell and an hour later, defendant McBride informed him that he was being placed in Administrative Segregation ("ASU") pending an investigation into the allegations in the Form 1030.

On August 10, 2017, at a committee hearing chaired by defendant Bradbury, defendant Townsend recommended that Plaintiff remain in ASU pending the investigation, basing his recommendation on the Form 1030. Defendant Bradbury approved Plaintiff's retention in ASU. Plaintiff informed defendants McBride, Townsend, and Bradbury that the Form 1030 was unreliable due to its vagueness and failure to adequately identify how the information was obtained, and that the Form 1030 violated prison regulations and the Due Process Clause.

On September 12, 2017, officer Martinez informed Plaintiff that he was being moved to the Special Housing Unit ("SHU") because "the counselors" wanted Plaintiff and his cellmate to be housed with the other inmates who were the subject of similar allegations. On or about September 27, 2017, Plaintiff was informed that there was no evidence to substantiate the claim that he was involved in a conspiracy to assault staff. Prison officials ultimately determined that the Form 1030 was issued in error.

Plaintiff alleges that the conditions in both the ASU and the SHU constituted a significant and atypical hardship in relation to ordinary prison life.

Second, Plaintiff challenges the security welfare checks ("SWCs") conducted during first watch (10 p.m. to 6 a.m.) while Plaintiff was housed in the SHU. Plaintiff alleges that these SWCs constituted deliberate indifference to his serious medical needs. Plaintiff was housed in the SHU from September 12, 2017 to November 22, 2017, when he was transferred to High Desert

United States District Court
Northern District of California

3

State Prison. While housed in the SHU, correctional officials conducted security welfare checks ("SWCs") every half-hour during first watch, despite a 2015 CDCR memorandum specifying that security welfare checks should only be conducted hourly during first watch. The SWCs were loud and disruptive, with the correctional officer stomping up and down stairs, rattling keys, opening, and closing section doors with a loud boom, and banging a metallic baton on every cell that beeped loudly to record the welfare check. These noises prevented Plaintiff from sleeping and negatively affected his physical and mental health, causing frequent headaches; shortness of breath; an irregular heartbeat; lack of interest in and energy for daily activities; and mental health issues.

Plaintiff submitted two Request for Services (CDCR Form 22) to defendant Ramsey regarding these SWCs. In the first Form 22, Plaintiff requested that correctional officials conduct the security welfare checks hourly during first watch as required by the CDCR and that correctional officials use courtesy when conducting these checks, such as by using the baton that vibrates or flashes a red light, instead of beeping, and by not aggressively stomping up and down stairs, rattling keys, banging the rod, or opening the section doors. Defendant Tunrell responded to the first Form 22, stating that he was following written orders to conduct SWCs hourly on all inmates in overflow ASU, that he was being respectful while conducting the SWC but metal on metal will make noise no matter how soft the touch, and that PBSP had provided ASU inmates with ear plugs to help with the noise generated by SWCs. In the second Form 22, Plaintiff complained that SWCs were supposed to be conducted hourly during first watch per a 2015 CDCR memorandum. Defendant Tunrell rejected the second Form 22 as an abuse of the grievance process, stating that the second Form 22 was duplicative of the first Form 22. Plaintiff appealed defendant Tunrell's Form 22 responses, and defendant Ramsey responded that defendant Tunrell's responses were correct. At some unidentified time, after receiving numerous complaints, PBSP officials reduced the SWCs to hourly during first watch.

Third, Plaintiff alleges that certain correctional officials who responded to his Form 22s or participated in processing his grievances regarding the above incidents violated his constitutional rights and state regulations. The complaint specifically identifies the following individuals'

participation in responding to Form 22s or grievances.

In August 2017, Plaintiff filed a grievance alleging that prison officials were knowingly relying on a false Form 1030 to retaliate against him.  Prison officials assigned defendant Lacy as the interviewer/investigator for the first level review of this grievance ("August 2017 Grievance"). Plaintiff had previously filed a staff complaint against defendant Lacy and named defendant Lacy in a federal complaint the month prior.  Consequently, defendant Lacy was biased and failed to properly investigate the grievance.  Plaintiff filed Form 22s and grievances alerting defendants Bramucci, Royal and Sheldon to defendant Lacy's retaliatory actions, but defendants Bramucci, Royal and Sheldon participated in the retaliation by failing to correct their subordinate's misconduct.

In September 2017, Plaintiff filed a grievance ("September 2017 Grievance") alleging that defendants Lacy, Bramucci, Royal and Sheldon had conspired to retaliate against him by compromising the integrity of the grievance when defendant Lacy was assigned to handle the interview for the August 2017 Grievance and defendants Bramucci, Royal and Sheldon failed to provide an unbiased interviewer and provided him with false information in response to his Form 22s about defendant Lacy's bias.  Defendant Manion was assigned as the interviewer/investigator for this grievance, but he made no attempt to interview defendants Lacy, Bramucci, Royal and Sheldon in processing/investigating this grievance.

On October 29, 2017, Plaintiff filed a grievance alleging that the manner in which the SWCs were conducted during first watch was detrimental to his physical and mental health. Defendant Royal interviewed him in connection with this grievance and ultimately denied this grievance for exceeding time constraints, stating that Plaintiff should have filed within thirty days of being housed in the SHU because he was aware of the SWCs from that date.  On November 5, 2017, Plaintiff filed a grievance challenging the cancellation of this grievance, arguing that the SWCs and sleep deprivation were ongoing.  This grievance was cancelled on March 30, 2018, at the third level of review as moot on the grounds that he was no longer housed in PBSP SHU.  On April 22, 2018, Plaintiff filed a grievance challenging this cancellation on the grounds that he required a third level decision to exhaust his administrative remedies.  This grievance was granted

United States District Court
Northern District of California

5

1    and on December 20, 2018, Plaintiff received a third level decision on the November 5, 2017

2    grievance.

3         Plaintiff filed Form 22s requesting that the SWCs be performed hourly and with less noise.

4    Defendants Tunrell's responses and defendant Ramsey's approval of these responses violated

5    Plaintiff's constitutional rights and prison regulations.

6         The body of the complaint does not detail any actions or inactions taken by defendants

7    Strain, Short, Parry, Barneburg, Bell, or Ducart, but these defendants are referenced in the causes

8    of action.

9         Plaintiff lists six causes of action.

10        In his first cause of action, Plaintiff alleges that defendants Kaufman, Lacy, McBride,

11   Strain, Parry, Bell, Bradbury, Ducart, and John Does violated his First Amendment right to be free

12   from retaliation for engaging in protected conduct when they allowed the issuance of a CDCR

13   Form 1030 that contained false information and allowed Plaintiff to be placed and retained in the

14   ASU and the ISU based on this Form 1030.

15        In his second and third causes of action, Plaintiff alleges that defendants Townsend,

16   Sheldon, Bradbury, and Ducart denied Plaintiff his Fourteenth Amendment right to due process

17   when they placed Plaintiff in the ASU and the SHU based on a Form 1030 that lacked indicia of

18   reliability.

19        In his fourth cause of action, Plaintiff alleges that defendant Lacy, Bramucci, Royal,

20   Sheldon, Manion, Barneburg, Short, and Bradbury violated his First Amendment right to be free

21   from retaliation for engaging in protected conduct when defendant Lacy was assigned as the

22   investigator/interviewer for Plaintiff's retaliation complaint and Plaintiff was not provided with an

23   unbiased investigator after he brought the issue to the other defendants' attention.  Plaintiff alleges

24   that the resulting investigation of his retaliation complaint therefore lacked integrity, violated

25   contemporary standards of decency and ethics, inflicted emotional and mental abuse, and

26   constated a campaign of harassment.

27        In his fifth cause of action, Plaintiff alleges that defendants Tunrell and John Does violated

28   his Eighth Amendment right to be free from cruel and unusual punishment when they conducted

United States District Court
Northern District of California

1    the SWCs in an aggressive and detrimental manner, causing Plaintiff to suffer from sleep

2    deprivation for 71 days, and that defendants Ramsey, Bramucci, Royal, and Bradbury participated

3    in the constitutional violation by doing nothing to address the manner in which the SWCs were

4    conducted after being informed of the issue.

5          In his sixth cause of action, Plaintiff alleges that defendants Bramucci, Ramsey, Lacy,

6    McBride, Manion, Strain Royal, Sheldon, Short, Parry, Barneburg, Bell, Bradbury, and Ducart

7    violated Plaintiff's Eighth Amendment right "to not be subjected to the deliberate indifference by

8    supervising staff of a practice and custom of failing to act and rectify the constitutional violations

9    of Plaintiff's rights."  Dkt. No. 1 at 54.  Plaintiff alleges that these defendants had actual or

10   constructive knowledge of the due process and Eighth Amendment violations arising from the use

11   of the falsified Form 1030 to place Plaintiff in ASU and SHU and the SWCs causing him sleep

12   deprivation, but took no actions to correct or rectify the misconduct, provided false information to

13   justify their inaction, hindered the grievance process by compromising the integrity of the

14   investigation of his retaliation complaint, and obstructed his ability to exhaust the grievance

15   system.  Plaintiff alleges that these defendants' actions are part of "a practice and custom, that

16   carries the force of law, of violating the constitutional rights of prisoners who exercise a protected

17   conduct, and have been deliberately indifferent to these violations by their failures to act and or

18   (sic) rectify the violations when they occur."  Dkt. No. 1 at 55.

19   **C.    Discussion**

20         Liberally construed, the complaint states the following three cognizable claims.

21         The allegation that defendants Kaufman, McBride, Bradbury, and Townsend placed

22   Plaintiff in administrative segregation based on evidence that lacked indica of reliability states a

23   cognizable due process claim.  While "administrative segregation in and of itself does not

24   implicate a protected liberty interest," a protected liberty interest may arise where an atypical,

25   significant hardship arose from a stay in segregation if the conditions there were a dramatic

26   departure from the standard conditions of confinement.  *Serrano v. Francis*, 345 F.3d 1071, 1078-

27   79 (9th Cir. 2003).  Liberally construed, the manner in which the SWCs were conducted during

28   first watch constituted an atypical and significant hardship.  In cases of administrative segregation

United States District Court
Northern District of California

7

1    (as distinguished from segregation for disciplinary violations), due process merely requires that

2    the prison officials provide the inmate with some notice of the transfer to administrative

3    segregation and an opportunity to present his views to the prison official charged with deciding

4    whether to transfer him to administrative segregation; that there is "some evidence" to support the

5    reason for the placement in administrative segregation; and that the evidence have some indicia of

6    reliability.  *See Bruce v. Ylst*, 351 F.3d 1283, 1287-88 (9th Cir. 2003).

7         The allegation that defendant Lacy refused to conduct an unbiased investigation of the

8    August 2017 grievance which challenged the placement in administrative segregation based on a

9    false Form 1030 in retaliation for being named in a staff complaint and a federal civil rights

10   complaint states a cognizable First Amendment retaliation claim.  *See Rhodes v. Robinson*, 408

11   F.3d 559, 567–68 (9th Cir. 2005) ("Within the prison context, a viable claim of First Amendment

12   retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action

13   against an inmate (2) because of (3) that prisoner's protected conduct, and that such action

14   (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not

15   reasonably advance a legitimate correctional goal.") (footnote omitted).

16        The allegation that defendant Turnell refused to modify how SWCs were conducted

17   despite the negative effect on Plaintiff's health, and that defendant Ramsey also refused to address

18   this ongoing issue when informed it of via Plaintiff's appeal of the Form 22, states a cognizable

19   Eighth Amendment claim.  *Keenan v. Hall*, 83 F.3d 1083, 1090 (9th Cir. 1996), *amended* 135 F.3d

20   1318 (9th Cir. 1998) (public conceptions of decency inherent in Eighth Amendment require that

21   inmates be housed in environment reasonably free of excessive noise); *Farmer v. Brennan*, 511

22   U.S. 825, 832 (1994) (Eighth Amendment violated when prison official knows of ongoing risk to

23   inmate's health and fails to take reasonable steps to abate risk).

24        However, the complaint suffers from the following deficiencies.

25        First, the complaint violates the joinder requirements set forth in Fed. R. Civ. P. 20(a)(2).

26   Fed R. Civ. P. 20(a)(2) provides that all persons "may be joined in one action as defendants if:

27   (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect

28   to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

United States District Court
Northern District of California

8

1    (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P.

2    20(a)(2).  The upshot of these rules is that "multiple claims against a single party are fine, but

3    Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2."

4    *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).  Plaintiff's First Amendment and due process

5    claims arises out of a separate question of law and fact than his Eighth Amendment claim.  To

6    proceed in this action, Plaintiff must identify whether he wishes to pursue the claims arising out of

7    the false Form 1030 and investigation of the Form 1030 – the due process and retaliation claim –

8    or to pursue his Eighth Amendment claim regarding the SHU SWCs.  He may pursue the other

9    claim(s) in a separate action.

10        Second, the complaint has failed to state a cognizable claim against defendants Bramucci,

11   Royal, Sheldon, and Manion because their only involvement in the alleged constitutional

12   violations was either their participation in the grievance process or their position as a supervisor.

13        A prison official's denial of an inmate's grievance generally does not constitute significant

14   participation in an alleged constitutional violation sufficient to give rise to personal liability under

15   Section 1983.  *See, e.g., Wilson v. Woodford*, No. 1:05–cv–00560–OWW–SMS, 2009 WL

16   839921, at *6 (E.D. Cal. Mar. 30, 2009) (ruling against prisoner on administrative complaint does

17   not cause or contribute to constitutional violation).  A prisoner has no constitutional right to an

18   effective grievance or appeal procedure.  *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir.

19   2003) (holding that prisoner has no constitutional right to effective grievance or appeal

20   procedure); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of

21   entitlement to a grievance procedure.").  Similarly, the claim that prison officials responded

22   improperly to Plaintiff's Form 22s fails to state a cognizable Section 1983 claim.  The allegations

23   against defendants Bramucci, Royal, Sheldon, and Manion concern their responses to Plaintiff's

24   grievances or Form 22s.

25        Plaintiff's claim that defendants Bramucci, Royal, Sheldon, and Manion conspired with

26   defendant Lacy to retaliate against also fails to state a cognizable Section 1983 claim.  This claim

27   is essentially a supervisory liability claim.  Plaintiff argues that his grievances or Form 22s put

28   defendants Bramucci, Royal, Sheldon, and Manion on notice that defendant Lacy was retaliating

United States District Court
Northern District of California

against him and conducting a biased investigation of his August 2017 grievance, and that these defendants' failure to assign an unbiased investigator to his August 2017 constitute a pattern and practice of violating his constitutional rights. There is no supervisory liability for Section 1983 claims, i.e. no liability under the theory that one is liable simply because he supervises a person who has violated a plaintiff's rights. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). To state a claim for relief under Section 1983 against a supervisor defendant, a plaintiff must allege some facts that would support a claim that (1) the supervisor defendant proximately caused the deprivation of rights of which plaintiff complains, *see Harris v. City of Roseburg*, 664 F.2d 1121, 1125 (9th Cir. 1981); (2) the supervisor defendant failed to properly train or supervise personnel resulting in the alleged deprivation, *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680 (9th Cir. 1984); (3) the alleged deprivation resulted from custom or policy for which the supervisor defendant was responsible, *see id.*; or (4) the supervisor defendant knew of the alleged misconduct and failed to act to prevent future misconduct, *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Here, the alleged constitutional violation was that defendant Lacy retaliated against Plaintiff for naming defendant Lacy in an unrelated staff complaint by failing to substantively investigate Plaintiff's August 2017 grievance. The defendants who responded to Plaintiff's complaints about defendant Lacy's participation in the August 2017 grievance did not cause the alleged constitutional violation and their denials of Plaintiff's August 2017 grievance and Form 22s did not result in future misconduct by defendant Lacy. Also, these supervisor-defendants' responses to Plaintiff's grievances and Form 22s took place *after* defendant Lacy's alleged retaliatory conduct and therefore cannot be the custom and policy that caused defendant Lacy to engage in the alleged unconstitutional acts. Defendants Bramucci, Royal, Sheldon, and Manion are dismissed from this action with prejudice because amendment would be futile. *See Schmitt v. Kaiser Found. Health Plan of Washington*, 965 F.3d 945, 960 (9th Cir. 2020) ("'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts'") (citing *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000)).

Third, Plaintiff has failed to state a claim against defendants Ducart, Parry, Short, Strain,

10

Barneburg, and Bell because the body of the complaint contains no specific allegations against them.  Plaintiff has not identified any actions or inactions by defendants Ducart, Parry, Short, Strain, Barneburg, and Bell that violated his constitutional rights.  The Court will not scour the exhibits for references to these defendants to determine whether a cognizable constitutional claim can be stated against these defendants.  These defendants are DISMISSED from this complaint with leave to amend, if Plaintiff can truthfully allege facts from which it can be reasonably inferred that these defendants violated his constitutional rights.  To the extent that Plaintiff has named these individuals as defendants because of their participation in reviewing his grievances or responding to his Form 22s, the Court reminds Plaintiff that a prison official's denial of an inmate's grievance or unsatisfactory response to a Form 22 generally does not constitute significant participation in an alleged constitutional violation sufficient to give rise to personal liability under Section 1983.

Fourth, the complaint does not state a cognizable retaliation claim against defendants Kaufman and McBride for allowing the issuance of the Form 1030 and Plaintiff's subsequent placement in ASU and SHU.  There are no facts alleged from which it can be reasonably inferred that these defendants were aware that Plaintiff had filed a staff complaint and civil rights complaint against defendant Lacy prior to their authoring and issuing the Form 1030.  There are also no facts indicating that defendants Kaufman and McBride had any involvement in the decision to place Plaintiff in the ASU or the SHU.  The First Amendment retaliation claim against defendants Kaufman and McBride is DISMISSED with leave to amend, if Plaintiff can truthfully allege facts from which it can be reasonably inferred that these defendants violated his constitutional rights.

Fifth, the John Doe defendants are DISMISSED from this action without prejudice.  The use of "John Doe" to identify a defendant is not favored in the Ninth Circuit, *see Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980), in part because it is effectively impossible for the United States Marshal to serve an anonymous defendant.  The Court's general practice is to dismiss Doe defendants without prejudice and, if the plaintiff is able to identify the unknown defendant through discovery, allow the plaintiff leave to amend the complaint to name the

intended defendant. *See Gillespie*, 629 F.2d at 642.  Plaintiff may seek to determine the identity of John Doe defendants through discovery and then, after he has determined the John Doe defendants' identities, request leave to amend the complaint to add these John Doe defendants.

**D.    Requiring Response From Plaintiff**

Within twenty-eight (28) days of the date of this order, Plaintiff shall inform the Court if he wishes to proceed with (1) the due process claim against defendants Kaufman, McBride, Townsend, and Bradbury and the First Amendment retaliation claim against defendant Lacy; or (2) the Eighth Amendment claim against defendant Turnell and Ramsey.  Upon receiving Plaintiff's response, the Court will issue an order of service.

In the alternative, Plaintiff may, within twenty-eight (28) days of the date of this order, file an amended complaint that addresses the joinder deficiency.  Plaintiff is reminded that defendants Bramucci, Royal, Sheldon, and Manion have been dismissed from this action with prejudice, and that all claims arising out of correctional officials' handling of Plaintiff's grievances or Form 22s have been dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the Court orders as follows.

1.    The Court DISMISSES with prejudice defendants Bramucci, Royal, Sheldon, and Manion and all claims arising out of correctional officials' handling of Plaintiff's grievances or Form 22s.  The Clerk shall terminate defendants Bramucci, Royal, Sheldon, and Manion from this action.

2.    The Court DISMISSES with leave to amend defendants Ducart, Parry, Short, Strain, Barneburg, and Bell, and the First Amendment claim against defendants Kaufman and McBride.

3.    The Court DISMISSES without prejudice the John Doe defendants.

4.    Within twenty-eight (28) days of the date of this order, Plaintiff shall inform the Court if he wishes to proceed with either (1) the due process claim found cognizable above against defendants Kaufman, McBride, Townsend, and Bradbury and the First Amendment retaliation claim found cognizable against defendant Lacy; or (2) the Eighth Amendment claim against

United States District Court
Northern District of California

United States District Court
Northern District of California

1   defendant Turnell and Ramsey.  Upon receiving Plaintiff's response, the Court will issue an order

2   of service.

3        In the alternative, Plaintiff may file an amended complaint that addresses the identified

4   deficiencies.  The amended complaint must include the caption and civil case number used in this

5   order, Case No. C 21-04368 HSG (PR) and the words "AMENDED COMPLAINT" on the first

6   page.  If using the court form complaint, Plaintiff must answer all the questions on the form in

7   order for the action to proceed.  An amended complaint completely replaces the previous

8   complaints.  *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 925 (9th Cir. 2012).  Accordingly,

9   Plaintiff must include in his amended complaint all the claims he wishes to present and all of the

10  defendants he wishes to sue, and may not incorporate material from the prior complaint by

11  reference.

12       Failure to either respond to the Court as directed above or to file an amended complaint in

13  the time provided will result in dismissal of this action without further notice to Plaintiff.  The

14  Clerk shall include two copies of the court's complaint form with a copy of this order to Plaintiff.

15       **IT IS SO ORDERED.**

16  Dated:  6/28/2022

17

18  HAYWOOD S. GILLIAM, JR.
    United States District Judge

19

20

21

22

23

24

25

26

27

28